**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:  BKY #20-30358
 Chapter 12
DANIEL B. MILLER,

       Debtor.

**AMENDED CHAPTER 12 PLAN OF REORGANIZATION**
**DATED AUGUST 13, 2020**

## PART 1: SUMMARY OF THE PLAN

The Debtor shall make a semi-annual payment to the Trustee **pursuant to the terms outlined in Part 15**. The first payment under this Chapter 12 plan shall be due December 31, 2020. This plan shall continue for a period of **forty-two (42) months** from its effective date. The property of the debtor is being valued, and the claim of each secured creditor is being treated as secured in the amount of the value of the property securing such claim. Costs of administration are being paid on the effective date of the plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. The debtor will pay the Trustee no less than all disposable income, as that term is defined in 11 U.S.C. § 1225, for Trustee administration and distribution to unsecured creditors. The deficiency claims of all secured creditors will be treated as unsecured claims unless otherwise ordered by the Court.

## PART 2: DEFINITIONS

1. "Creditors" means all entities having a claim against the debtor.
2. "Secured Creditor" means a creditor with a lien or security interest in property of the debtor.
3. "Claim" means a timely filed claim which has been allowed by the Court or a secured claim which is dealt with in the plan whether or not a claim is filed.
4. "Effective Date" means the date on which the Order of Confirmation becomes final.
5. "Trustee" means the Chapter 12 Trustee.
6. "Disposable Income" means all income received by the debtor annually after deducting operating expenses, living expenses (salaries approved) and plan payments.

## PART 3: LIQUIDATION ANALYSIS

The debtor's net equity in their property, after deducting the amounts of the secured claims and exemptions, is **$92,116.41**. General and priority unsecured creditors (but not including attorney's fees) will receive no less than **$92,116.41** over the life of the Plan. The debtor's liquidation analysis is attached to this plan as Exhibit A.

## PART 4: DISPOSABLE INCOME

The debtor's projections of gross income, operating expenses, living expenses and plan payments indicate that they may have disposable income annually in the amount of **$140,457.38** to make payments under this plan. For the term of this plan, all of the debtor's disposable income, regardless of the amount, will be paid to the Trustee for payment of cost of administration, distribution to secured creditors, distribution on attorney fees and distribution to unsecured creditors. All disposable income (future earnings not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the debtor and his dependents) for three years following the effective date, shall be submitted to the Trustee for distribution. All creditors with Class 4 – General Unsecured Claims shall be paid a pro rata share of disposable income after administrative and priority claims have been paid.

## PART 5: LIVING EXPENSES

The debtor's projection of living expenses for the year are **$36,000.00**.  The debtor shall limit their annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## PART 6: COSTS OF ADMINISTRATION AND PROFESSIONAL FEES

Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court. The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties under the Bankruptcy Code in administering this case. The debtor shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtor, unless otherwise ordered by the Court.  **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein**.  **Creditors shall only accept direct payments from the debtor if specified in the Plan.**

## PART 7: SECURED CLAIMS

**Class 1: First Farmers & Merchants State Bank**
**105 N. Main Street**
**Grand Meadow, MN 55936**

First Farmers & Merchants State Bank ("FF&M") holds a secured claim in the real estate, farm equipment and machinery, cattle, crops owned by the Debtor with a proof of claim filed in the total amount of $7,419,326.89. The secured claim includes pre-petition collateral as well as post-petition replacement liens on crops, cattle and rents. The Promissory Notes and Mortgages control, except as modified here-in.

a. The issue of valuation is pending before the Court and the parties have submitted a proposed agreed order on valuation.

**REAL ESTATE**

b. The secured claim on the real estate is in the total amount of **$3,341,950.00**.

c. The balance of the real estate to be retained has a value of **$3,341,950.00**. This claim shall be amortized over 30 years at **5.25%** (based upon WSJ Prime Rate of 3.25% plus **2.0%**). **The Debtor shall make a semi-annual payment in the amount of $111,816.53. The first semi-annual payment shall be due on or before December 31, 2020. The payment** shall be made directly to the creditor. Payments shall be as follows:

| December 31, 2020 | $111,816.53 |
| June 30, 2021 | $111,816.53 |
| December 31, 2021 | $111,816.53 |
| June 30, 2022 | $111,816.53 |
| December 31, 2022 | $111,816.53 |
| June 30, 2023 | $111,816.53 |
| December 31, 2023 | $111,816.53 |

d. **The Debtor has a purchase agreement with Elijah Miller for the sale of certain real estate. If the real estate is sold, all of the net proceeds from the sale shall be paid directly to FF&M upon closing to be applied to the balance owed on the real estate in paragraph (b) above. The Debtor shall file a motion for approval of any sale of real estate. Upon the closing of a court-approved sale, the Debtor may file a motion to modify the plan.**

Semi-Annual Payment Payable directly to First Farmers & Merchants State Bank

## EQUIPMENT, MACHINERY, CATTLE, CROPS

e. The secured claim on the equipment, machinery, cattle, crops, bank accounts in the amount of **$906,253.00 reduced to the extent that the Debtor delivers the equipment described in paragraph (f) below in the same condition that it was in when it was appraised to be disposed of in accordance with the Uniform Commercial Code.**. The claim shall be amortized over 7 years at **5.25**% (based upon WSJ Prime Rate of 3.25% plus **2.0%**). **The first semi-annual payment shall be due on or before December 31, 2020.** This payment shall be made through the Chapter 12 Trustee. FF&M shall be entitled to a continuing security agreement in all pre-petition and post-petition assets now owned or subsequently acquired to secure the payment due above.

f. **The Debtor has identified $83,425.00 worth of equipment to be surrendered back to FF&M. The Debtor shall work with the bank to allow for the removal of the following equipment for sale or auction. The value listed below is the average of the Debtor's appraisal and the FF&M appraisal. The automatic stay shall lift upon confirmation as to the following equipment:**

   a. Two (2) hay/grain feeders: $600.00
   b. Four (4) calf grain feeders (10 ft): $400.00
   c. JD 640 loader mounts: $500.00
   d. 2007 Polaris Ranger 700: $900.00
   e. Milk shuttle: $4,750.00
   f. 50 KW Generator: $825.00
   g. Teagle Bale Processor: $17,250.00
   h. H&S 430 Manure Spreader: $10,500.00
   i. 4 section drag: $375.00
   j. Bale unwinder 3 point: $500.00
   k. JD 6300 CAH: $13,000.00
   l. 4 Steel Fenceline bunks 20': $2,800.00
   m. JD Gator 4x2(1): $2,500.00
   n. JD 6' Material bucket: $300.00
   o. Manure Fork 6' 640: $300.00
   p. JD Material Grapple bucket: $2,750.00
   q. 3 pt. Mount Rear Bale Spear: $50.00
   r. Pallet Forks 640 JD: $525.00
   s. Long 12' disc: $450.00
   t. Self Feeder: $2,200.00

u. **9' Silage bucket 640: $750.00**
v. **IH 540 Plow: $200.00**
w. **(8) 20' Feeder bunks: $2,000.00**
x. **JD 800 Swather and trailer: $675.00**
y. **Bale Spear 640 JD: $250.00**
z. **JD Material bucket 8': $400.00**
aa. **Pallet Forks Global: $525.00**
bb. **Pallet Forks 640 JD: $475.00**
cc. **Three Prong Bale Spear Global: $300.00**
dd. **KW Generator PTO: $825.00**
ee. **H360 JD Global Mount Loader: $9,250.00**
ff. **Calf huts (35): $3,625.00**
gg. **1994 Rough cut 3-point mower: $500.00**
hh. **(4) Bale Spears: $750.00**
ii. **IH Disc: $250.00**
jj. **(2) Bale Spears: $350.00**
kk. **Pressure washer: $200.00**
ll. **Red 200 Bu. Barge Box: $250.00**
mm. **EZ Trail Gravity Wagon 200 Bu: $250.00**
nn. **Diesel Heater: $125.00**

**TOTAL - $83,425.00**

**The payments shall be as follows:**

|  | **If ALL equipment referenced above is delivered to FF&M** | **If the equipment is not delivered to FF&M** |
|---|---|---|
| **December 31, 2020** | $70,992.63 | $78,190.44 |
| **June 30, 2021** | $70,992.63 | $78,190.44 |
| **December 31, 2021** | $70,992.63 | $78,190.44 |
| **June 30, 2022** | $70,992.63 | $78,190.44 |
| **December 31, 2022** | $70,992.63 | $78,190.44 |
| **June 30, 2023** | $70,992.63 | $78,190.44 |
| **December 31, 2023** | $70,992.63 | $78,190.44 |

**Semi-Annual Payment on Equipment, Cattle and Crops - $70,992.63 or $78,190.44 (as described above) (Payment through Trustee)**

h. FF&M shall be entitled to a continuing security agreement in all pre-petition and post-petition assets now owned or subsequently acquired to secure the payment due above, including a security interest all post-petition crops, crop insurance, government payments and programs, post-petition rents, accounts receivable, livestock, and products, offspring, and proceeds thereof, as adequate protection for ongoing use of cash collateral.

i. For so long as any indebtedness remains due to FF&M, Debtor shall maintain all assets in good working order.

j. The Debtor may sell real estate only after filing a motion for court approval and obtaining an order approving a sale. **If the Debtor sells real estate during the course of the Chapter 12 case, the Debtor shall pay the net proceeds of the sale to FF&M to reduce the principal debt owed. The Debtor may file a modified chapter 12 plan to reamortize the payment.**

k. **If the Debtor sells cattle, equipment, or machinery during the course of the Chapter 12 case, the Debtor shall pay the net proceeds of the sale to FF&M to be applied to the**

**balance owed on Equipment, Cattle and Crops. The Debtor will file a motion for approval of any sales outside the ordinary course of business. The Debtor may file a modified chapter 12 plan to reamortize the payment.**

l. **The Debtor has authority to use the cash collateral (rents/crop sales) to fund the payments to First Farmers & Merchants State Bank, plan payments and payments/expenses related to the farm operation so long as the Debtor is not in default on obligations owed to First Farmers & Merchants State Bank under this plan and FF&M is granted a security interest in all post-petition crops, crop insurance, government payments and programs, post-petition rents, accounts receivable, livestock, and products, offspring, and proceeds thereof.**

m. The Class 1 Claim (both real estate and equipment, cattle, crops secured claims) shall mature and become fully and immediately due and payable on **June 30, 2024**. Upon completion of the plan, the Debtor shall make direct payments to First Farmers & Merchants State Bank until the loans are refinanced or otherwise mature.

n. In the event of default under the terms and conditions of this Plan (including, but not limited to, payment default), FF&M may, after allowing for a twenty-day cure period after notifying Debtor's counsel of the default, file an affidavit of non-compliance seeking entry of an order granting relief from the automatic stay of 11 U.S.C. § 362(a) or dismissal of the case so that FF&M may record deeds-in-lieu and enforce a voluntary surrender agreement that the Debtor executed and delivered to FF&M contemporaneously with the filing of this Plan. Within ten calendar days of the filing of the affidavit, the Borrower may object solely on the basis that any default has been cured. The Debtor may cure at any time up until the end of the ten calendar day period immediately following the filing of the affidavit. If the Debtor objects, an evidentiary hearing shall be set on the first available date. If no objection is filed within ten calendar days of the filing of the affidavit, the Debtor stipulates and agrees that the uncured event of default constitutes "cause" to grant relief from the automatic stay without further hearing or to dismissal of the case and the Debtor consents to the Court granting the requested relief.

o. In the event that this case is either voluntarily or involuntarily converted to a case under chapter 7 of the Bankruptcy Code, FF&M may file an affidavit of noncompliance seeking entry of an order granting relief from the automatic stay of 11 U.S.C. § 362(a) without serving a notice of default and without any cure period. The Debtor stipulates and agrees that the conversion of this case to a case under chapter 7 constitutes "cause" to grant relief from the automatic stay without further hearing and the Debtor consents to the Court granting the requested relief.

p. In the event the above captioned case is either voluntarily or involuntarily dismissed, FF&M may record the deeds-in-lieu and enforce the voluntary surrender agreement immediately upon dismissal. In the event the Debtor files a subsequent bankruptcy petition under chapter 7, the Debtor stipulates and agrees that FF&M may be granted relief from the automatic stay of 11 U.S.C. § 362(a) on an ex parte basis by filing an affidavit citing this paragraph (p) so that FF&M may record and enforce the deeds-in-lieu and voluntary surrender agreement referenced in paragraph (n) above. In the event the Debtor files a subsequent bankruptcy petition (the "Second Bankruptcy") under chapters 11, 12, or 13, the trustee or FF&M may file an immediate motion to dismiss the Second Bankruptcy with prejudice prohibiting the Debtor from later filing a subsequent bankruptcy petition for six months. The Debtor stipulates and agrees that the act of filing the Second Bankruptcy petition shall constitute "cause" to dismiss the Second Bankruptcy and, furthermore, the Debtor consents to the Court granting the requested relief and to dismiss the Second Bankruptcy with prejudice as to the filing of a subsequent bankruptcy petition for a minimum of six months.

q. **To the extent that the voluntary surrender agreement or deeds in lieu contemplated under p above have yet to be executed as of the effective date of the Plan or need to be supplemented or amended after plan confirmation in order to include all of the collateral that secures the claims of FF&M, the Debtor shall execute and deliver any additional or amended voluntary surrender agreement or deed in lieu within five business days of**

       **receiving such a request from FF&M.**

r.     FF&M shall retain its liens on all of its **farm personal property and real estate** (pre-petition and post-petition liens) until paid in full.

s.     Upon confirmation of the Chapter 12 Plan and as the monthly operating reports are prepared and ready to be filed, the Debtor shall provide copies of all monthly operating statements and all attachments to the Chapter 12 Trustee and First Farmers & Merchants State Bank simultaneously. The monthly operating reports shall state the current inventory on hand including livestock numbers and weights.

**Class 2: Associated Bank**
    **1305 Main Street**
    **Stevens Point, WI 54481**

Associated Bank holds a secured claim in the real estate (25609 151st Ave, Spring Valley, MN 55975) in the amount of $83,378.09. The Debtor is not modifying this secured claim and the promissory note and mortgage shall control. The Debtor shall continue to make the necessary payment to Associated Bank to keep the mortgage and escrow payments current. The current payment is in the amount of $861.85.

                                      **Direct Payment to Associated Bank**

**Class 3: Deere & Company d/ba John Deere Financial**
    **PO Box 6600**
    **Johnston, IA 50131**

**Deere & Company d/b/a** John Deere Financial holds a secured claim in a John Deere 9500 Combine and **John Deere 643 Corn Head** in the amount of **$6,386.04 pursuant to Proof of Claim #14**. **Deere & Company d/b/a John Deere Financial is fully secured by its collateral and entitled to interest and attorneys' fees as of August 13, 2020, in the amount of approximately $2,000, but subject to any limitation under 11 U.S.C. § 506(b). The secured claim shall be amortized over 3 years and accrue interest at 5.0%. The Payments shall be made through the Chapter 12 Trustee's office. Payments shall be as follows**:

| | |
|---|---|
| **December 31, 2020** | $2,419.54 |
| **December 31, 2021** | $2,419.54 |
| **December 31, 2022** | $2,419.54 |
| TOTAL | $7,258.62 |

                                **Annual Payment Payable to the Chapter 12 Trustee**

# PART 8: PRIORITY AND ADMINISTRATIVE CLAIMS

**Class 1:** Pittman & Pittman Law Offices, LLC
712 Main Street
La Crosse, WI 54601

Pittman & Pittman Law Offices, LLC has an administrative claim in the estimated amount of **$40,000.00 for attorneys fees**. The claim is subject to court approval for compensation. The claim for **$40,000.00** shall accrue interest at 0.0% and shall be paid during the life of the plan through annual payments. **The Payments shall be made through the Chapter 12 Trustee's office. Payments shall be as follows:**

| | |
|---|---|
| **December 31, 2020** | **$40,000.00** |
| **December 31, 2021** | **$0.00** |
| **December 31, 2022** | **$0.00** |
| **TOTAL** | **$40,000.00** |

**Annual Payment Payable to the Chapter 12 Trustee**

# PART 9: GENERAL UNSECURED CLAIMS

**Class 1.** Class 1 consists of general unsecured claims, claims of all unsecured creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, claims resulting from the value of a secured claim being of a value less than the security held against held claim, and/or those secured creditors whose claims are determined to be unsecured, claims of all accommodation parties and co-makers or loans of which the debtors are the principal, governmental claims arising under 11 U.S.C. § 1232, and claims for taxes and penalties which are not included in any other Class. Payments made to this Class shall be disbursed by the Trustee pro-rata. **Pursuant to the Amended Liquidation Analysis attached, the Debtor shall make payments to the general unsecured creditors in the amount of atleast $92,116.41. As necessary, the Debtor shall sell the titled assets not subject to liens to provide payment to the Trustee in lieu of cash payment. Payments shall be as follows:**

| | |
|---|---|
| **December 31, 2020** | **$4,038.81** |
| **December 31, 2021** | **$44,038.81** |
| **December 31, 2022** | **$44,038.81** |
| **TOTAL** | **$92,116.43** |

**Annual Payment Payable to the Chapter 12 Trustee**

# PART 10: 11 U.S.C. § 1232 GOVERNMENTAL CLAIMS

Governmental claims arising under 11 U.S.C. § 1232 shall be (1) treated as general unsecured claims arising before the date of filing, (2) are not entitled to priority claim treatment, and (3) shall be discharged in accordance with 11 U.S.C. §§ 1228 & 1232. If the debtors file a tax return for a period for which such a claim arises, the debtors shall prepare and serve a notice of the claim on the governmental unit(s) charged with the responsibility for the collection of the tax in accordance with 11 U.S.C. § 1232(d)(2) and, to the extent that the governmental unit(s), the debtors, or the Trustee timely files a proof of claim pursuant 11 U.S.C. § 1232(d)(3), the claim shall be included in and receive pro rata treatment under Part 9: Class 1.

## PART 11: EXECUTORY CONTRACTS AND LEASES

Part 11 consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this Part. The debtor assumes the following executory contracts and leases:

**Class 1:** **AgriFinancial**
**2209 River Road**
**Louisville, KY 40206**

**AgriFinancial holds a lease agreement on irrigation equipment. The lease is rejected.**

## PART 12: CAUSES OF ACTION

**As of the date of filing, the Debtor has a cause of action that is currently pending over the costs related to fixing a fence (Fillmore County - Case No. 23-CO-19-73). The timeframe is currently unknown due to the action being rescheduled due to the Covid-19 pandemic. If funds are recovered, they are non-exempt under the Amended Liquidation Analysis and the funds would be payable to the unsecured creditors. Such Payments would be in addition to the minimum required payment to the general unsecured class listed in the plan contained in Part 9.**

## PART 13: EXECUTION OF PLAN AND CASH FLOW ANALYSIS

**The debtor proposes to continue the cash crop to make the plan payments**. The debtor's projections of income, operating expenses, and plan payments are attached as Exhibit B.

## PART 14: RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this plan shall retain their liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference. This plan and Order confirming the plan shall constitute a modification of the terms and conditions of said instruments as set forth herein.

## PART 15: GENERAL PROVISIONS

1. The Court shall retain jurisdiction over the debtor and his property for the term of the plan.

2. As part of the continuing farm operation, the debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. The debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

**3. The Debtor shall make all payments to the Chapter 12 Trustee except as specifically designated above. The Debtor anticipates a significant sales of cattle and equipment that will adjust the debt obligations owed to FF&M . The Debtor may file a modified plan to adjust payments. A summary of semi-annual payments to the Chapter 12 Trustee shall be as follows:**

| | |
|---|---|
| **December 31, 2020** | **$123,323.26** |
| **June 30, 2021** | **$70,992.63** |
| **December 31, 2021** | **$123,323.26** |
| **June 30, 2022** | **$70,992.63** |
| **December 31, 2022** | **$123,323.26** |
| **June 30, 2023** | **$70,992.63** |
| **December 31, 2023** | **$70,992.63** |

/e/Greg P. Pittman_____
Greg P. Pittman
Bar no.: 0394983
Pittman & Pittman Law Offices, LLC
712 Main Street
La Crosse, WI 54601
Tele: 608-784-0841
Fax:  608-784-2206
Email: Greg@PittmanandPittman.com

Signed: /e/Daniel B. Miller_____

Debtor 1:Daniel B. Miller_____

Dated:  _August 13  2020_____